**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

|  |  |
|---|---|
| Linda J. Clayton,            ) | No. CV 07-1494-PHX-JAT |
|                   )             Plaintiff,        ) | **ORDER** |
| vs.                          ) |  |
| Michael J. Astrue, Commissioner of Social ) Security,                    ) |  |
|                              Defendant.        ) |  |

Plaintiff appeals the Social Security Commissioner's denial of disability benefits. The Court now rules on Plaintiff Linda Clayton's Motion for Summary Judgment (Doc. #12) and Defendant Commissioner's Motion for Remand (Doc. #17).

**I.    Background**

    **A.    Procedural Background**

On June 19, 2002, Plaintiff, Linda J. Clayton, applied for Disability Insurance Benefits and Supplemental Security Income, alleging a disability onset date of March 1, 1997. The Agency approved her application for supplemental security income, effective December 16, 2002, but denied her application for benefits. Plaintiff then requested a hearing with an Administrative Law Judge.

The ALJ held a hearing on November 10, 2003. The ALJ denied Plaintiff's claim for disability benefits on January 15, 2004. The ALJ found that there was insufficient evidence

to establish disability before March 31, 2002, Plaintiff's last date of eligibility. The ALJ found that Plaintiff was not disabled at two of the five-step sequential evaluation.

The Appeals Council remanded the case for further proceedings. The ALJ conducted a supplemental hearing on September 14, 2005. Plaintiff testified at the hearing, as did Kathleen McAlpine, a vocational expert. On November 18, 2005, the ALJ again decided that Plaintiff was not disabled at step two. The Appeals Council did not grant Plaintiff's request for review. Plaintiff filed this action on August 3, 2007.

### B. Medical Background

An MRI on November 12, 1997, revealed mild disk bulging at multiple lumbar levels with no evidence of spinal stenosis or disk herniation (Tr. 673). After reviewing the MRI, Dr. Kurt Shroeder concluded that an area of heterogeneous hypertrophied fat existed, but little else. (Tr. 675). Dr. Shroeder recommended follow-up visits as need. (Tr. 675). Dr. Shroeder also reassured Plaintiff that he did not think she would need surgery. (Tr. 675).

Plaintiff received treatment from Sun Life Family Health Center beginning July 2000, primarily for medication refills. (Tr.189-201). Her medical history included hypertension, allergies, chronic lumbosacral strain, and menopause. (Tr. 200). And her physician prescribed a relatively low dose of a muscle relaxant. (Tr. 200-01).

On December 16, 2002, Dr. Thrasher examined Plaintiff at the request of the Disability Determination Service. (Tr. 203-07). After performing a physical examination and reviewing Plaintiff's medical records, Dr. Thrasher assessed mild to moderate osteoarthritis of the right knee; right hip pain caused by mild degenerative change; mild degenerative spondylosis; left shoulder girdle pain without significant range of motion loss and without evidence of an impingement; hypertension; history of emphysema; and fibrocystic breast disease. (Tr. 207). Dr. Thrasher opined that Plaintiff could lift and carry 50 pounds occasionally and 20 pounds frequently; could sit for six hours during an eight-hour day; and stand and/or walk for less than two hours during an eight-hour day. (Tr. 209-10).

Also in December 2002, x-rays revealed degenerative changes in Plaintiff's hands, right knee, lumbar spine, and cervical spine. (Tr. 261-62, 290-307, 308-12). On September 18, 2003, cervical spine x-rays showed severe degenerative disc disease at C5-C6. (Tr. 876).

In January of 2003, Dr. Kattapong, a non-examining state-agency physician, assessed Plaintiff's ability to perform certain tasks. Dr. Kattapong opined that as of December 16, 2002, Plaintiff could sit for about six hours in an eight-hour workday and stand and/or walk for at least two hours in an eight-hour workday and could lift fifty pounds occasionally and twenty-five pounds frequently. (Tr. 211-12). Dr. Kattapong stated the there was insufficient evidence to adjudicate Plaintiff's disability benefits claim. (Tr. 218). In April of 2003, another non-examining state-agency physician, Dr. Stagg, also stated there was insufficient evidence upon which to determine Plaintiff's condition as of her date last insured, March 31, 2002. (Tr. 186).

On May 28, 2003, Dr. Escobar examined Plaintiff and outlined her medical records from August 1987 through March 1996. (Tr. 233-39). Dr. Escobar opined Plaintiff could not sustain full-time work, even at the sedentary level of exertion. (Tr. 239-41). Plaintiff could only sit for fifteen to thirty minutes at a time and for three to four hours total in a workday; could stand ten to fifteen minutes at a time and for a total of two hours in a workday; and could walk for twenty minutes at a time and for a total of one to two hours in a workday. (Tr. 240).

In a letter dated November 14, 2003, Dr. Brower indicated he had been Plaintiff's treating physician from January 21, 1991 through April 17, 2002, at a variety of health clinics. He opined that the functional limitations Dr. Escobar described in May 2003 applied to the period from 1997 to 2002.

**II.  Standard of Review**

A district court:

> may set aside a denial of disability benefits only if it is not supported by substantial evidence or if it is based on legal error. Substantial evidence means more than a mere scintilla but less than a preponderance. Substantial evidence

- 3 -

> is relevant evidence, which considering the record as a whole, a reasonable person might accept as adequate to support a conclusion. Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's decision must be upheld.

*Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (internal citation and quotation omitted). This is because "[t]he trier of fact and not the reviewing court must resolve conflicts in the evidence, and if the evidence can support either outcome, the court may not substitute its judgment for that of the ALJ." *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992). If further proceedings could remedy defects in the ALJ's decision, the Court should remand the claim to the Commissioner. *McAllister v. Sullivan*, 888 F.2d 599, 603 (9th Cir. 1989).

### III.  Discussion

To qualify for disability benefits under the Social Security Act, a claimant must show, among other things, that he is "under a disability." 42 U.S.C. §423(a)(1)(E). The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). A person is

> under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.

42 U.SC. §423(d)(2)(A).

The Social Security regulations set forth a five-step sequential process for evaluating disability claims. 20 C.F.R. §404.1520; *see also Reddick v. Chater*, 157 F.3d 715, 721 (9th Cir. 1998). A finding of "not disabled" at any step in the sequential process will end the inquiry. 20 C.F.R. §404.1520(a)(4). The claimant bears the burden of proof at the first four steps, but the burden shifts to the Commissioner at the final step. *Reddick*, 157 F.3d at 721. The five steps are as follows:

1. First, the ALJ determines whether the claimant is "doing substantial gainful

- 4 -

1 activity." 20 C.F.R. §404.1520(a)(4)(i). If so, the claimant is not disabled.

2     2. If the claimant is not gainfully employed, the ALJ next determines whether the claimant has a "severe medically determinable physical or mental impairment." 20 C.F.R. §404.1520(a)(4)(ii). To be considered severe, the impairment must "significantly limit[] [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. §404.1520(c). Basic work activities are the "abilities and aptitudes to do most jobs," for example: lifting; carrying; reaching; understanding, carrying out and remembering simple instructions; responding appropriately to co-workers; and dealing with changes in routine. 20 C.F.R. §404.1521(b). Further, the impairment must either be expected "to result in death" or "to last for a continuous period of twelve months." 20 C.F.R. §404.1509 (incorporated by reference in 20 C.F.R. §404.1520(a)(4)(ii)). The "step-two inquiry is a de minimis screening device to dispose of groundless claims." *Smolen v. Cater*, 80 F.3d 1273, 1290 (9th Cir. 1996). If the claimant does not have a severe impairment, the claimant is not disabled.

    3. Having found a severe impairment, the ALJ next determines whether the impairment "meets or equals" one of the impairments listed in the regulations. 20 C.F.R. §404.1520(a)(4)(iii). If so, the claimant is found disabled without further inquiry. If not, before proceeding to the next step, the ALJ will make a finding regarding the claimant's "residual functional capacity based on all the relevant medical and other evidence in [the] record." 20 C.F.R. §404.1520(e). A claimant's "residual functional capacity" is the most he can do despite all his impairments, including those that are not severe, and any related symptoms. 20 C.F.R. §404.1545(a)(1).

    4. At step four, the ALJ determines whether, despite the impairments, the claimant can still perform "past relevant work." 20 C.F.R. §404.1520(a)(4)(iv). To make this determination, the ALJ compares its "residual functional capacity assessment . . . with the physical and mental demands of [the claimant's] past relevant work." 20 C.F.R. §404.1520(f). If the claimant can still perform the kind of work he previously engaged in, the claimant is not disabled. Otherwise, the ALJ proceeds to the final step.

1  5. At the final step, the ALJ determines whether the claimant "can make an
2  adjustment to other work" that exists in the national economy. 20 C.F.R. §404.1520(a)(4)(v).
3  In making this determination, the ALJ considers the claimant's "residual functional capacity"
4  and his "age, education, and work experience." 20 C.F.R. §404.1520(g)(1). If the claimant
5  can perform other work, he is not disabled. If the claimant cannot perform other work, he
6  will be found disabled. As previously noted, the Commissioner has the burden of proving
7  the claimant can perform other work. *Reddick*, 157 F.3d at 721.
8  20 C.F.R. §404.1520.

9  In this case, the ALJ concluded at step two of the sequential process that Plaintiff was
10 not disabled. The ALJ found that as of her date last insured, March 31, 2002, Plaintiff did
11 not have a severe medically determinable physical or mental impairment. To be entitled to
12 disability benefits, a claimant must be disabled on or before the date his or her insured status
13 expires. *Flaten v. Sec'y of Health and Human Srvs.*, 44 F.3d 1453, 1461-62 (9th Cir. 1995).
14 The ALJ therefore denied benefits.

15 On appeal, Plaintiff contends that the ALJ's ruling is not supported by substantial
16 evidence. Plaintiff claims the ALJ erred in failing to use a medical consultant and in failing
17 to give a date for the onset of disability. Plaintiff further challenges the ALJ's decision to
18 give only little probative value to the opinion of treating physician Dr. Bower. Plaintiff also
19 argues that the ALJ improperly discredited her subjective symptom testimony and the
20 testimony of third parties regarding her pain.

21 The ALJ found that Plaintiff had severe impairments and was limited to sedentary
22 work as of December 1, 2002. The ALJ further found that before March 31, 2002, Plaintiff
23 did not have any impairment or impairments that significantly limited her ability to perform
24 basic work-related activities. The ALJ did not give a disability onset date. Two state-agency
25 physicians stated that not enough evidence existed to determine the disability onset date.

26 Social Security Ruling 83-20 provides:
27    In some cases, it may be possible, based on the medical
28

> evidence to reasonably infer that the onset of a disabling impairment(s) occurred some time prior to the date of the first recorded medical examination, e.g., the date the claimant stopped working. How long the disease may be determined to have existed at a disabling level of severity depends on an informed judgment of the facts in the particular case. This judgment, however, must have a legitimate medical basis. At the hearing, the [ALJ] should call on the services of a medical advisor when onset must be inferred. If there is information in the file indicating that additional medical evidence concerning onset is available, such evidence should be secured before inferences are made.

While Plaintiff has the burden of proving her disability, the ALJ has "a duty to assist in developing the record." *Armstrong v. Comm'r of Soc. Sec.*, 160 F.3d 587, 589 (9th Cir. 1998). If the medical record does not contain definite evidence concerning the onset date and the ALJ must make medical inferences, SSR 83-20 requires the ALJ to obtain the services of a medical advisor and to obtain all available evidence before making the onset determination. *Id*. at 590. If the date of onset is unclear, then the ALJ commits reversible error by failing to call a medical expert. *Id*. at 589. (internal citation and quotation omitted).

The medical record here did not contain definite evidence from which to determine the disability onset date. The record had reports and examinations close in time to, but after, Plaintiff's last insured date, however, did not have any pertinent medical evidence closely preceding the last insured date.[1] Consequently, the ALJ had to infer the disability onset date when she found Plaintiff was not disabled before March 31, 2002. The ALJ therefore committed reversible error when she failed to obtain the services of a medical advisor.

When an ALJ commits error, the Court has the discretion to remand for further administrative proceedings or to remand for an award of benefits. *Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996). Remand for further proceedings is appropriate "if enhancement of the record would be useful." *Benecke v. Barnhart*, 379 F.3d 587, 593 (9th Cir. 2004). If additional proceedings could remedy defects in the original proceeding, then the case should

---

[1] The last pertinent medical evidence before March 31, 2002 was from 1997.

1  be remanded. *McAllister*, 888 F.2d at 603.

2      The Court finds that remand to the ALJ for further proceedings is appropriate in this
3  case. An enhancement of the record would be very useful, given the dearth of evidence
4  between November 1997 and December 2002. The ALJ based many of her findings on the
5  lack of objective evidence in the record. Development of the record would provide
6  significant guidance. On remand, the ALJ must have a medical advisor testify.

7      Also on remand, the ALJ shall reevaluate all the evidence and give specific reasons
8  for the weight given to physician statements, Plaintiff's testimony, and lay witness
9  statements. The Commissioner argues that the Court should affirm all the ALJ's findings and
10 just remand to obtain the opinion of a medical advisor. But it is at least possible that the
11 medical advisor's opinion will change the ALJ's findings regarding the physician statements,
12 the pain testimony, and the lay witness statements. The ALJ therefore should reevaluate all
13 the evidence after viewing it as a whole.

14     Accordingly,

15     IT IS HEREBY ORDERED Granting in part Plaintiff's Motion for Summary
16 Judgment (Doc. #12). Plaintiff's motion is Granted to the extent it requests a remand to the
17 ALJ for further proceedings and a reevaluation of all the evidence. It is Denied to the extent
18 Plaintiff requests a remand for an award of benefits.

19     IT IS FURTHER ORDERED Granting in part the Commissioner's Motion for
20 Remand (Doc. #17). The Commissioner's motion is Granted to the extent the Commissioner
21 seeks a remand for further proceedings, but is Denied to the extent the Commissioner
22 requests the Court to affirm the ALJ's earlier findings.

23     DATED this 15th day of September, 2008.

                                                                   James A. Teilborg
                                                       United States District Judge